UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

THOMAS SANTIAGO
BONILLA,
　　　　　　Plaintiff,

　　　v.　　　　　　　　　　　　　　　　　　Case No. 3:15-cv-1614 (VAB)

SCOTT SEMPLE and
MELODY A. CURREY,
　　　　　　Defendants.

**RULING ON DEFENDANTS' MOTION TO DISMISS**

In this case, Plaintiff, Thomas Santiago Bonilla, challenges the applicability of a "cost of incarceration" lien to the proceeds he received from the settlement of a civil lawsuit brought under 42 U.S.C. § 1983.  He argues that the Connecticut statute creating this lien is preempted by 42 U.S.C. § 1983.  Compl. ¶ 24, ECF No. 3.  He seeks declaratory and injunctive relief from this Court to prevent Connecticut from enforcing the lien.  *Id.*  He has named as Defendants the Commissioner of Connecticut's Department of Correction ("DOC"), Scott Semple, and the Commissioner of the Connecticut Department of Administrative Services, Melody Currey.

Defendants now move to dismiss Mr. Bonilla's Complaint in its entirety, arguing that the Eleventh Amendment bars his claim and that his Complaint fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the Defendant's Motion to Dismiss, ECF No. 18, is **GRANTED**.

## I.　　Factual Background

Currently in DOC custody, Mr. Bonilla is serving a sixty-year sentence of imprisonment imposed in state court for murder as an accessory and felony murder.  Compl. ¶¶ 6, 14, ECF No. 3.

In October 2012, after his conviction, Mr. Bonilla initiated a lawsuit *pro se* under 42 U.S.C. § 1983 against the three police officers who investigated and arrested him for these crimes and who worked for the City of Waterbury, Connecticut.  *Id.* ¶¶ 9, 14-15; *see also Bonilla v. Tirado*, Case No. 3:12-cv-01514-RNC (D. Conn.).  In this section 1983 case, he alleged claims of false arrest, malicious prosecution, use of excessive force, unconstitutional search of his home, and unconstitutional conditions of confinement at the Waterbury police station.  Compl. ¶¶10-16, ECF No. 3; Initial Review Order 4-5, ECF No. 6 from *Bonilla v. Tirado*, Case No. 3:12-cv-01514-RNC (D. Conn.).[1]  The Court dismissed his claims for false arrest and malicious prosecution but allowed the others to proceed to discovery against the Defendants in their individual capacities.  Initial Review Order 4-5, ECF No. 6 from *Bonilla v. Tirado*, Case No. 3:12-cv-01514-RNC (D. Conn.).

After discovery was completed and the Court denied two summary judgment motions brought by Mr. Bonilla and the Defendants, Mr. Bonilla agreed to settle his claims against the three officers for a payment of money.  Docket Sheet from *Bonilla v. Tirado*, Case No. 3:12-cv-01514-RNC (D. Conn.); Compl. ¶¶ 17-18, ECF No. 3.

Upon receiving notice of this settlement, officials from the Connecticut Department of Administrative Services demanded that Mr. Bonilla give them roughly half of the settlement proceeds under a "cost of incarceration" lien purportedly created by Connecticut General Statutes section 18-85b.  *Id.* ¶¶ 20-22.  They allegedly sent Mr. Bonilla a draft complaint and indicated that they planned to bring an action in state court to collect on the state's lien.  *Id.* ¶ 23.

---

[1] At this stage, the Court is generally limited to the allegations in the Complaint, but it may take judicial notice of court filings and cases solely for the purpose of establishing their existence, not for establishing the truth of the facts contained in those filings.  *See Global Network Commc'ns v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (citation and internal quotation marks omitted).

As discussed in further detail below, section 18-85b(a) requires an inmate to pay a portion of the costs of his incarceration from proceeds he obtains from recoveries in civil lawsuits.  Conn. Gen. Stat. § 18-85b(a).

## II.    Standard

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In determining whether a complaint states a plausible entitlement to legal relief, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff.  *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).

Defendants' arguments regarding immunity may also implicate Federal Rule of Civil Procedure 12(b)(1).  *See e.g.*, *Doe v. Connecticut*, Civil Action No. 3:10cv1981 (VLB), 2011 WL 5170292, at *2 (D. Conn. Oct. 31, 2011) (finding that Eleventh Amendment immunity arguments implicate subject matter jurisdiction); *see also Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 191 n.6 (E.D.N.Y. 2013) (observing that whether motions to dismiss raising Eleventh Amendment immunity arguments should be resolved under Rule 12(b)(6) or Rule 12(b)(1) is unsettled in the Second Circuit).  The standards of review for a lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a plausible legal claim under Rule 12(b)(1) are "substantively identical." *Lerner v. Fleet Bank, N.A.*, 318 F. 3d 113, 128 (2d Cir. 2003) *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014) *as recognized by Am. Psychiatric Ass'n v. Anthem Health*

*Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016).  However, under Rule 12(b)(1), the party invoking

the Court's jurisdiction has the burden to demonstrate subject matter jurisdiction exists.  *Id.*

Conversely, the movant bears the burden on a Rule 12(b)(6) motion.  *Id.* This distinction does

not affect the outcome in this case.

### III.    Discussion

Connecticut's "cost of incarceration" lien statute provides, in relevant portion, as follows

> [i]n the case of causes of action of any person obligated to pay the
> costs of such person's incarceration under section 18-85a and
> regulations adopted in accordance with said section. . . the claim of
> the state shall be a lien against the proceeds therefrom in the amount
> of the costs of incarceration or fifty per cent of the proceeds received
> by such person after payment of all expenses connected with the
> cause of action, whichever is less . . .

Conn. Gen. Stat. § 18-85b(a).  The statute also provides that any recovery an inmate receives

from a civil lawsuit may be assigned directly to the State of Connecticut and that the lien "shall

constitute an irrevocable direction to the attorney for such person to pay the Commissioner of

Correction . . . in accordance with its terms. . ."  *Id.*

Defendants argue that Mr. Bonilla's case should be dismissed, because he seeks

retrospective relief, from which they are immune under the Eleventh Amendment, and because

his Complaint fails to state a plausible legal claim under Federal Rule of Civil Procedure

12(b)(6).  The Court will address each of these arguments in turn.

### A.  Sovereign Immunity under the Eleventh Amendment

Defendants argue that they are immune from Mr. Bonilla's claim, because he seeks

retrospective and not prospective relief.  Defs.' Br. 8-11, ECF No. 19-1.  The Court disagrees.

Generally speaking, the Eleventh Amendment prevents a state from being sued in federal

court unless it has consented to such a suit "in express terms" or Congress has unequivocally

expressed its intent to abrogate a state's immunity.  *New York City Health & Hosps. Corp. v.*

*Perales*, 50 F.3d 129, 134 (2d Cir. 1995).[2]  The Supreme Court created an exception to this general principle, by allowing claims against state employees named in their official capacities for prospective, injunctive relief.  *Ex parte Young*, 209 U.S. 123 (1908); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, [ ] a State cannot be sued directly in its own name regardless of the relief sought.  Thus, the implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State.") (citations omitted).  Conversely, claims for retrospective injunctive relief against a state are barred by the Eleventh Amendment.  *See Edelman v. Jordan*, 415 U.S. 651, 663-68 (1974) (retrospective relief against a state is barred by the Eleventh Amendment); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984) ("[W]e declined to extend [ ] *Young* to encompass retroactive relief . . .").  In drawing this distinction between prospective and retrospective relief, the Supreme Court sought to strike a balance between preserving the Eleventh Amendment and the supremacy of federal law in our legal system.  *Halderman*, 465 U.S. at 105-06; *Perales*, 50 F.3d at 135.

To determine whether relief is prospective or retrospective, a court should "conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Verizon Maryland, Inc. v. Public Serv. Com'n of Maryland*, 535 U.S. 636, 645 (2002).  In analyzing this question, the Court's focus is on the "*effect* of the relief sought" and when the plaintiff's injury occurs, not on the label the relief is given.  *Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 256 (2011)

---

[2] The text of the Eleventh Amendment itself only prohibits suits brought against a state by citizens of another state, but the Supreme Court expanded the Amendment to "bar suits against a State by citizens of that same State as well." *Papasan v. Allain*, 478 U.S. 265, 276 (1986) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).

(internal quotation marks and citation omitted); *Edelman*, 415 U.S. at 666-67; *Papasan v. Allain*, 478 U.S. 265, 278, 282 (1986).

Courts have found retrospective relief to include injunctions designed to compensate injury or replicate a damages award, *see e.g., Edelman*, 415 U.S. at 664-69 (holding that an order compelling retroactive payment of benefits was barred by Eleventh Amendment), and injunctions that involve adjudicating the legality of a state official's past actions, *see Papasan*, 478 U.S. at 277-78 ("*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past . . ."). They have found prospective those injunctions designed to remedy ongoing violations of federal law, even if those injunctions have an ancillary or even a substantial impact on state treasuries. *See e.g.*, *Milliken v. Bradley*, 433 U.S. 267, 289-90 (1977) (holding that an order for expensive remedial programs in schools was "prospective" even if it had an impact on a state's treasury); *see also Verizon Maryland, Inc.*, 535 U.S. at 646 (relief is prospective so long as a court does not "impose *upon the State* a monetary loss resulting from a past breach of a legal duty . . .") (internal quotation marks and citation omitted).

In this lawsuit, Mr. Bonilla does not seek the equivalent of a monetary award from the State of Connecticut. Instead, he seeks the answer to a legal question as to whether a payment is necessary. He has posed this question before any money has changed hands. Thus, Mr. Bonilla seeks an order restraining state officials from enforcing a statute that is allegedly inconsistent with federal law, which is prospective. *Compare Verizon Maryland, Inc.*, 535 U.S. at 645-46 (holding that a plaintiff sought prospective relief where he asked that "state officials be restrained from enforcing an order in contravention of controlling federal law.") *with Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 462-63, 469 (1945) (holding that a request to seek a

refund of a tax payment that the plaintiff had made under protest was retrospective and barred by the Eleventh Amendment), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 622-23 (2002); *see also Condell v. Bress*, 983 F.2d 415, 420 (2d Cir. 1993) (holding that labor union's claim for money withheld from state employees' payroll was prospective relief because "the money was withheld, continues to be withheld, and will remain withheld until the employees leave State employ") (internal quotation marks and citation omitted); *Nat'l R.R. Passenger Corp. v. McDonald*, 978 F. Supp. 2d 215, 220, 228-35, 238 (S.D.N.Y. 2013) (relief sought was retrospective where plaintiff challenged a series of takings that had already occurred and title had transferred to the state, but not with respect to one parcel, because the title had not yet been transferred to the state).

Defendants argue that Mr. Bonilla's requested relief is retrospective because Connecticut General Statutes section 18-85b creates an "irrevocable direction" to Mr. Bonilla's attorney to pay the State the amount owed under the lien and the State has, in essence, already acted.  Defs.' Br. 9, ECF No. 19-1.  In other words, they argue that the conduct alleged to violate federal law and injure Mr. Bonilla was the creation of the State's legal right to his recovery, or the lien itself. Because this legal right already exists, the Defendants believe that Mr. Bonilla seeks a remedy for a past state action.  The Court disagrees.

Defendants' conception of the timing and nature of Mr. Bonilla's injury does not square with the principles governing legally cognizable injuries.  An injury occurs when "another's legal right, for which the law provides a remedy" is violated or when "an actionable invasion of a legally protected interest" occurs.  Black's Law Dictionary (10th ed. 2014).  In addition, to be legally cognizable, injuries must arise from "concrete" and "actual or imminent" actions.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Lewis v. Casey*, 518 U.S. 343, 349-

50 (1996) (recognizing a distinction between the role of the courts, which is to address actual or imminent injury, and the role of "political branches", which is "to shape the institutions of government in such fashion as to comply with the laws and the Constitution" and noting that "the distinction between the two roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly.").  Under the Defendants' view, Mr. Bonilla's claim accrued when Connecticut General Statutes section 18-85b was passed by the legislature, when he first became incarcerated, or when he became subject to section 18-85b by settling his section 1983 case.  None of these events, however, constitutes a sufficiently "concrete" event or an actual invasion of Mr. Bonilla's rights to constitute an injury.  The injury here will occur when Connecticut actually recovers the portion of his section 1983 recovery it believes it is owed under the lien statute.

Defendants also argue that the result in this case is "controlled" by *New York City Health and Hospitals Corporation v. Perales*, 50 F.3d 129 (2d Cir. 1995).  Defs.' Reply 2, ECF No. 32. In *Perales*, the Second Circuit found that plaintiffs' claims seeking reimbursement for already performed medical services under Medicaid were retrospective in nature and, therefore, barred by the Eleventh Amendment.  *Perales*, 50 F.3d at 135-37.  The alleged harm in *Perales* was the failure of the State of New York to pay doctors for services doctors had already provided to individuals covered by Medicaid.  *Id.*  To support their position, Defendants emphasize the following pronouncement from *Perales*: "[t]o the extent [ ] a suit against a state sought to extract money for an accrued liability, as distinct from suit seeking the expenditure of state funds for future compliance with a grant of prospective relief, [ ] the Eleventh Amendment bar[s] suit against a state."  *Id.* at 135.  They argue that, because the cause of action in this case has already

"accrued," meaning Connecticut can bring a claim against Mr. Bonilla to recover the value of the lien, *Perales* demonstrates that the relief sought in this case is retrospective.

However, the Second Circuit did not use the term accrued in the sense of a legal action accruing. Instead, it used the term to mean when a liability "accrues," meaning it is owed. In *Perales*, the Court addressed whether a state should pay the plaintiffs. Here, it is Mr. Bonilla who allegedly owes money to the State. He does not seek a refund or payment from the State of Connecticut, but rather an order finding that requiring him to pay would violate federal law. Moreover, crucial to the Court's ruling in *Perales* were policy and legal considerations specific to the healthcare reimbursement context. 50 F.3d at 136 ("Plaintiffs' proposition does not rest comfortably in the reality of the Medicaid schemes or in Eleventh Amendment jurisprudence as it has been applied to Medicaid reimbursement disputes."). Here, such concerns are absent.

Finally, the *Perales* Court distinguished the retrospective scenario before it, involving "whether a particular service underlying a claim was reimbursable at a particular rate," from a scenario appropriately found to be prospective relief involving "the propriety of [a state agency] withholding payments pending review." *Id.* at 137. Here, Mr. Bonilla's claim is more similar to the latter—he seeks an evaluation of the propriety of a payment that he has not yet made. Thus, *Perales* does not support a finding that Mr. Bonilla seeks retrospective relief here.

## B. Rule 12(b)(6) Analysis

Defendants also argue that Mr. Bonilla has failed to state a claim upon which relief can be granted, because 42 U.S.C. § 1983 does not preempt Connecticut General Statutes section 18-85b in this case. For the reasons that follow, the Court agrees.

The Supremacy Clause of the United States Constitution "invalidates state laws that interfere with, or are contrary to federal law." U.S. Const. art. VI, cl. 2; *Air Transport Ass'n of*

*Am., Inc. v. Cuomo*, 520 F.3d 218, 220 (2d Cir. 2008) (citation and internal quotation marks omitted).  Three types of preemption exist (1) express preemption, (2) field preemption, and (3) conflict preemption.  *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010).  Preemption is express "when a federal statute expressly directs that state law be ousted."  *Cuomo*, 520 F.3d at 220 (citation and internal quotation marks omitted).  Field preemption occurs when "in the absence of explicit statutory language . . . Congress intended the Federal Government to occupy [a field] exclusively . . ."  *Id.* (citation and internal quotation marks omitted); *New York SMSA Ltd.*, 612 F.3d at 104.  Conflict preemption occurs "where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives."  *New York SMSA Ltd.*, 612 F.3d at 104.  The latter is at issue in this case, and, more specifically, a subset of conflict preemption known as obstacle preemption.  *See Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 162 (2d Cir. 2013); *Goonan v. Fed. Reserve Bank of N.Y.*, 916 F. Supp. 2d 470, 492 (S.D.N.Y. 2013).

In so-called "obstacle preemption" cases, courts must first divine Congress's objectives in passing a particular federal statute by examining legislative history and the language of the statute itself.  *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liability Litig.*, 725 F.3d 65, 102-03 (2d Cir. 2013).  They must then analyze whether the state law at issue constitutes a "sufficient obstacle" to the purpose of the federal law to be preempted.  *Id.* at 101-02.  What constitutes a "sufficient obstacle" to warrant preemption is "a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects."  *Id.* at 101 (internal quotation marks and citation omitted).  But a plaintiff bears a heavy burden in an obstacle preemption case in that he must show more than "[t]he mere fact of tension. . . [but

rather that] the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together."  *Id.* at 101-02 (internal quotation marks and citation omitted); *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607 (2011) ("Our precedents establish that a high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act.") (internal quotation marks and citation omitted).  In other words, he must show that the conflict is a "sharp one."  *Marsh v. Rosenbloom*, 499 F.3d 165, 178 (2d Cir. 2007) (internal quotation marks and citation omitted).

Section 1983 provides, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  Its purpose is "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

Mr. Bonilla argues that Connecticut's cost of incarceration statute frustrates the primary purpose of section 1983, which in his view, is to ensure that individuals whose constitutional rights are violated "are able to obtain full redress and compensation" for that harm.  Pl.'s Opp. Br. 11-12, ECF No. 29.  To support his position, he cites an Eighth Circuit case, *Hankins v. Finnel*, in which the Court held that section 1983 preempted a state cost of incarceration statute as applied to the damages an inmate recovered from a section 1983 lawsuit.  964 F.2d 853, 861 (8th Cir. 1992).  In *Hankins*, the plaintiff sued an employee of the State of Missouri, in his individual capacity under 42 U.S.C. § 1983, alleging that he sexually harassed and molested him. *Id.* at 854.  A jury awarded him $3,001 in nominal and punitive damages.  *Id.*  The State of

Missouri then initiated a civil action seeking to recover ninety percent of the amount of the judgment under the Missouri Incarceration Reimbursement Act. *Id.* The Eighth Circuit held that section 1983 preempted the state statute, because "[t]o allow the State to largely recoup this award would be inimical to the goals of the federal statute . . . [and] neither the State nor its employees would have the incentive to comply with federal and constitutional rights of prisoners." *Id.* at 861.[3]

The Court finds that the conflict between Connecticut General Statutes section 18-85b and the section 1983 case brought here is not so "sharp" and irreconcilable to warrant preemption. First of all, Mr. Bonilla's section 1983 claim was against a municipality and not the State of Connecticut. Thus, the concern that the Eighth Circuit expressed in *Hankins* about reducing the incentive for states to comply with the constitution is absent from this case. Just as importantly, the doctrine of obstacle preemption only applies where the conflict between federal and state law is irreconcilable completely. In this particular case, the Connecticut statute's partial reduction of Mr. Bonilla's recovery does not create a "conflict so direct and positive that the two acts cannot be reconciled or consistently stand together." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liability Litig.*, 725 F.3d at 101-02 (internal quotation marks and citation omitted).

Indeed, even if Mr. Bonilla had not simply settled this particular section 1983 claim, but prevailed outright, the application of Connecticut General Statutes section 18-85b would not be

---

[3] This Court has found a number of cases in this Circuit distinguishing *Hankins. See e.g.*, *Vincent v. Sitnewski, Co.*, No. 10 Civ. 3340 (TPG), 2011 WL 4552386, at *3-5 (S.D.N.Y. Sept. 30, 2011) (finding that a crime victims restitution statute was not preempted by section 1983); *Smith v. Little Flower Children's Servs. of N.Y.*, No. CV-99-1410 (RJD), 2005 WL 1890283, at *4 (E.D.N.Y. Aug. 4, 2005) (section 1983 did not preempt statute authorizing public welfare officials to assert liens on recoveries in personal injury actions obtained by welfare recipients); *Brown v. Stone*, 66 F. Supp. 2d 412, 438-39 (E.D.N.Y. 1999) (holding that section 1983 did not preempt statute authorizing a state to recover proceeds that the plaintiff recovered in a tort lawsuit arising out of the state's psychiatric treatment provided to him); *Colondres v. Scoppetta*, 290 F. Supp. 2d 376, 384 (E.D.N.Y. 2003) (finding that section 1983 did not preempt a statute authorizing a lien on proceeds awarded in a lawsuit to a welfare recipient to reduce the amount the state owed to the plaintiff on another civil judgment).

inconsistent with the goals of section 1983.  Mr. Bonilla's section 1983 lawsuit only sought to recover civilly for the circumstances surrounding his arrest, not challenge the propriety of his underlying criminal conviction.  As long as the fact of his incarceration is not proven to be unjust, it could not be "irreconcilable" to allow the State of Connecticut to enforce Connecticut General Statutes section 18-85b against a judgment obtained under section 1983.  For that reason, Mr. Bonilla's arguments for more discovery  fall short.

Accordingly, for all of these reasons, the Court finds that Mr. Bonilla has failed to state a plausible legal claim that section 1983 preempts Connecticut General Statutes 18-85b, as it is applied to him.

## IV.    Conclusion

For the reasons described above, the Defendants' Motion to Dismiss, ECF No. 18, is **GRANTED**.  The Clerk is directed to enter judgment for the Defendants and close the case.

**SO ORDERED** this first day of September 2016 at Bridgeport, Connecticut.

  /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE